GRAHAM vs. DE WITT.

*In the matter of the Estate of* LEONARD LEE, *deceased.*

THE testator was appointed by deed, a trustee, to mortgage, lease or sell certain
real estate, for the purpose of paying charges, to invest one third of the pro-
ceeds to meet a dower right, and to distribute the remainder, including the
third on the decease of the widow, among the grantors. The lands were
sold, two thirds of the proceeds, after payment of the charges, distributed,
and the remaining third retained for the dower. The widow and trustee both
having died, it was held that the executor of the trustee might be directed by
the Surrogate to make distribution among the parties entitled. On the de-
cease of the life-tenant of the one-third, the substance of the trust having ter-
minated, except as to the payment to the remainder-men, the demand against
the executor of the trustee was in the nature of an equitable debt. The
Surrogate has jurisdiction to order the payment of equitable as well as legal
claims. The trust fund not having been invested, nor kept separately, and
the active branch of the trust having ceased, the appointment of a new
trustee was not requisite in order to make title to the fund.

By the terms of the trust there was no positive direction to sell, but only a discre-
tionary power—the instrument therefore did not of itself effect a conversion
from real into personal estate. Till the power was exercised, the property
remained and was to be considered as realty, but after it was exercised
and the conversion had been effected, the property must be treated as per-
sonalty, and where parties interested died subsequent to the sale, the succes-
sion would pass to their next of kin and not to their heirs-at-law.

Where there is an unqualified direction to convert money into land or land into
money, the property will have the character so directed even in case of de-
volution, before such character has been in fact assumed.

But where there is a mere power or discretion to change the quality of the estate,
the succession will take effect according to the nature of the property at the
time the succession attaches.

S. P. NASH, *for Petitioner.*

I. Leonard Lee, having received the proceeds of the real
estate of the petitioners, sold by him under the trust deed,
was bound by that trust to keep the fund invested and sepa-
rate from his individual estate. By failing to do so, by ming-

ling the funds with his own, he became *debtor* to the petition-ers, and they, by like reason, became creditors of his estate. (*Matter of Stafford*, 11 *Barb.*, 353; *Utica Ins. Co.* vs. *Lynch*, 11 *Paige*, 520; *Lyse* vs. *Kingdon*, 1 *Collyer*, 184; *Knatch-bull* vs. *Fearnhead*, 3 *M. & Craig*, 122.)

If the trust vested in Lee be considered as a trust of per-sonal estate exclusively, and the interests of the beneficiaries as interests in personal property, not real estate, then their claims against Lee while living, for a conversion to his own use of the trust fund, would be of the same nature with other personal demands, and provable against his estate in the same way as any other debt. Does it make any difference, *as be-tween the trustee and the beneficiaries*, where the liability of the trustee grows out of the conversion of the trust funds, whether those funds as among the beneficiaries be considered as real or personal estate? It would seem not. Joseph Graham claims for instance of Mr. Lee's estate, that Lee converted to his own use, say $500 which belonged to Graham. He also claims, say $100 as his share of a like sum belonging origin-ally to Thomas C. Graham, which Lee also converted to his own use. As to this last sum Joseph Graham makes his title to it *as between himself and Thos. C. Graham*, as heir-at-law, upon the ground that the fund was real estate.

*Shumway* vs. *Cooper*, 16 *Barb.*, 556, may be cited as op-posed to this view, but on a close examination of the case it will not be found so. The proceeding before the Surrogate was on the petition of one claiming as the *next of kin* of the intestate, *not as creditor*. The intestate, Eliza Jane Cooper, was entitled to certain real estate which was sold while she was an infant, by an order of the Court of Chancery; and the pro-ceeds were invested under the direction of the Court, on bond and mortgage. After her death, her husband, as administra-tor of his wife, got possession of these securities, and received the money on them, which the petitioner, as the mother of the intestate, now claimed to have accounted for, upon the ground, as it would seem, that since the law of 1848, giving certain rights to married women, the husband had no right

to this property of his wife. The petition was dismissed, first on the ground that the property was real estate; second, that consequently the administrator did not hold it *as administrator*, and could not therefore be called to account before the Surrogate, and that the Surrogate had no jurisdiction to settle the rights of heirs at law (of the intestate, of course) to property in the hands of the administrator—the right to compel an accounting being confined to creditors, legatees, and next of kin.

In the case of the Grahams it is not a *fund* that the petitioners claim, but a *debt* for which Lee in his lifetime was personally responsible. The petitioners do not claim as heirs at law, or as next of kin of the testator, but as creditors. They make title *as between themselves* by assignment, bequest, descent or otherwise, as the case may be; but not thus do they make title against the estate—their only title, as respects it, being as creditors.

Suppose Joseph and Samuel H. Graham, by instrument in writing, placed in Mr. Lee's hands in his lifetime, $5000 upon trust to invest the same in real estate for them. This money by operation of law would be considered as equitably converted into real estate from the time of the creation of the trust, and would, as well as real estate purchased with it, be descendible to the heirs at law. Suppose Lee invested the fund in real estate, but wrongfully took title in his own name, and then subsequently sold the property, mingling the proceeds with his own individual moneys, can any one doubt that the beneficiaries would have a personal claim against the trustee, or if the trustee died, against his estate? Still as between the beneficiaries in case of their deaths, their right would devolve to their heirs at law.

II. The trust estate held by Mr. Lee was, as between the beneficiaries, real estate, and descended as such among the tenants in common.

1. At the time of the creation of the trust, the property was real estate vested in the heirs at law of Joseph Graham,

senior, subject to mortgage and to the dower right of his widow. The object of the trust deed was not to convert the estate, but to manage it, to provide for the incumbrances upon it, and the widow's dower, and accordingly there was a discretion left in the trustee to *lease or sell.* (See 1 *Jarman on Wills,* 524, *marg. pag. and note p.* 526; *Thornton* vs. *Hawley,* 10 *Vesey,* 129; *Walker* vs. *Denne,* 2 *Id.,* 170.)

2. As it should not depend upon the *discretion of the trustee* whether the property shall go to the next of kin under the statute of distributions, or to the heir at law, the court refer primarily to the instrument itself, not to the action of the trustee under it, to ascertain the character of the estate. But it will hardly be contended here that the trust deed itself converted the estate into personal property before the trustee sold, and while perhaps he might never sell. (1 *Jarman,* 526, *and cases cited above.*)

3. The conversion is never carried farther than required by the purposes of the trust. After the payment of the debts, therefore, the residue of the proceeds of this estate, which was held by the grantors as heirs at law, should be distributed among them as heirs at law, and especially that one third which, notwithstanding the sale, still retained, during the life of the widow, its character as an estate in dower.

There was no intention on the part of the owners to change their rights or interests in this property. For certain purposes it might be necessary to sell it; subject to these purposes it remained, as among the owners, impressed with the character it had when it descended to them. (*Vid.* 1 *Jarman on Wills,* ch. 19, *sub.* iv., *p.* 553, *et seq.; Allen* vs. *Dewitt,* 3 *Comst.,* 276.)

THE SURROGATE.—The testator was appointed a trustee by the heirs and widow of Joseph Graham deceased, to take possession of his real estate; and mortgage, lease, *or* sell the same for the purpose of paying the debts and charges thereon, and

to invest one-third of the residue for the payment of the widow's dower, and to distribute the remainder, including the aforesaid third on the decease of the widow, among the parties entitled. The trustee sold the property and performed the trust, except as to the distribution of the third to be invested for the widow's dower. The widow and the trustee both having died, two of the persons entitled to a share of the fund retained for the widow's dower have cited the executor of the trustee to pay over. The fund does not exist in the shape of specific investments, but was mingled by the deceased trustee with his own moneys. Can distribution now be made by the executor of the trustee without the appointment of a new trustee; and if so, are the funds to be distributed as real or as personal estate? By the terms of the trust, it is evident there is no positive and absolute direction to sell the lands, but it is discretionary whether the sale shall be made. The instrument, therefore, does not of its own force effect a conversion of the estate from realty to personalty. Till the discretion was exercised, the property must be considered to have remained in its original state and condition; but after the power was exercised and the estate sold, or in other words, the conversion effected, it must be treated as personalty, according to its actual condition at the time of the decease of the parties interested. The rule seems to be this—that where the direction is unqualified and absolute, either to convert money into land or land into money, the property will bear the character so directed, even in case of devolution before the character so directed has been in fact assumed. But on the other hand, where there is a mere power or discretion to change the quality of the property, the succession will take effect according to the nature of the property at the time the succession attaches. When the authority has not been exercised, there is no conversion. (*Bourne* v. *Bourne*, 2 *Hare*, 35; *Banks* v. *Scott*, 5 *Madd*. 493; 1 *Jarman*, 530.) Thus, in case of a mortgage with power of sale, if the sale takes place in the life-time of the mortgagor, the residue is to be treated according to its actual condition as personalty; but if not

made until after the mortgagor's death, as realty. ( *Wright* v. *Rose*, 2 *Sim. & Stu.*, 323 ; *Brown* v. *Bigg*, 7 *Vesey*, 279 ; *Polley* v. *Seymour*, 2 *Young & Coll.*, 708; *In re Evans*, 2 *Cromp., M., & R.*, 206 ; *Biggs* v. *Andrews*, 5 *Sim.*, 424.) And where there is a conveyance in trust with a power of sale, if the trustees sell in the life-time of the party entitled, and have the money in hand at the time of his death, it would belong to his personal representatives. (*Griffith* v. *Ricketts*, 7 *Hare*, 299 ; *Story's Eq. Jur.*, § 790.) The reason is obvious in cases where the trustee has no discretion, why his failure to comply with the directions of the deed or will, should not be permitted to alter the character of the property, or change the rule of succession. But if a discretion be given, then the conversion having been left to the judgment of the trustee, the nature of the property depends upon the exercise of that discretion. The testator, or grantor, in case of a will or deed, has given a power to change the nature of the subject matter ; and as that power has been exercised or has not been exercised, at the death of the party in interest, so is the succession to be determined according to the character of the subject in its then existing form. The power relates back to the instrument by which it was given, and by relation is the act of the grantor. The descent takes effect according to the nature of the subject when the succession devolves. If a testator devise lands, and give a power to his executors to sell, the devisees take subject to the execution of the power. If a devisee die before the power be executed, the estate devolves as land, but if after, it devolves as personalty. The same rule applies to a grant in trust, with a power of sale. The only exception existing, is in cases of the sale of lands of infants.

But in the present instance, I think the grantors in the trust deed under which these lands have been sold, have provided expressly as to the disposition of the proceeds of the lands, under that clause of the deed which directs the fund to be divided " among the parties of the first part, their executors, administrators, or assigns." This must be carried out as a special direction of the deed, and a substantial part

of the trust. (*Van* vs. *Barnett*, 19 *Vesey*, 102.) It thus being ascertained that. the property in the hands of the deceased trustee was personal estate, he was in respect to that fund a creditor of the *cestui que trusts*, or their representatives, and was bound to divide it among them on the decease of the life-tenant. He mingled the funds with his own, so that on his decease, his· estate remains indebted to the trust. On the death of the life-tenant, the trustee, not having divided the fund among the parties entitled, and the substance of the trust having terminated except simply the payment to the parties interested, it seems to me to fall within the jurisdiction of the Surrogate to order his executor to make that payment. There is no occasion for the appointment of a new trustee. That is not necessary to make title to the trust fund, for that has not been kept separately. The active branch of the trust has ceased, and nothing remains but to pay the several parties entitled. It is true the obligation having grown out of a trust, the demand is in the nature of an equitable debt; but the Surrogate has jurisdiction to examine, settle, and order the payment of equitable as well as· legal claims. (*Jumel* vs. *Jumel*, 7 *Paige*, 591; *Gardner* vs. *Gardner*, *ibid.*, 112.) The executor on the final accounting can have all the parties in interest before the Court, the amount of the entire fund ascertained, and a proper distribution among the *cestui que trusts* directed, and this will exonerate him from further liability.